Wetherill v. Hough.

---

SAMUEL WETHERILL et al.

*v.*

JOHN S. HOUGH.

1. When the real estate of an infant is converted into money by the order of the court, and the infant dies before attaining his majority, the fund will be treated as real estate and descend to the heirs-at-law of the infant.

2. Where there is a compulsory conversion of real estate, as in the exercise of the right or power of eminent domain, without the consent or against the will of the owner of the fee, being *sui juris* or of disposable capacity, he must either recognize it or manifest a willingness to accept it as personalty to effect a conversion.

3. Where all tenants in common of real estate, who are of age, undertake to convey the fee, including the interest of one not of age, and the portion of the purchase-money supposed to represent the interest of the latter be paid to his guardian, as to the adults the conversion is out and out, and the fund so held by the guardian will be treated as personal estate, as between the adults and the legal personal representatives of the infant, in case of his death.

On bill and demurrer.

*Mr. William L. Dayton,* for the demurrant.

*Mr. Samuel D. Oliphant, Jr., contra.*

BIRD, V. C.

William Wetherill was the owner of certain lands and died seized thereof, leaving him surviving several children, one of whom was named Sarah M., who married John S. Hough. Sarah M. died January 10th, 1875, leaving her surviving the said John S. Hough and Frances Eleanor A. E. Hough, their only child. The title of the said lands which descended to Sarah Hough, at her death passed to her daughter, the said Frances Eleanor A. E., subject to the estate by the curtesy of her father. The complainants were the brothers and sisters of the said Sarah, and consequently the uncles and aunts of the said Frances Eleanor, and they claim that the fee of the said lands would have descended to them (had it not been disposed of as hereinafter will appear) as the heirs-at-law of the said Frances Eleanor.

During the lifetime of Frances, by an order of this court, a portion of the said lands, of the value of $200, was conveyed to the gas company of the city of Atlantic City, and $80 paid for a right of way over a lot of land in Atlantic City. And $1,320.64 was paid for land taken by the Chelsea Branch Railroad Company, under the exercise of the right of eminent domain.

The said John S. Hough was appointed guardian of his daughter, the said Frances Eleanor, and received all of said moneys as such guardian, and held them as such at the time of the death of the said Frances Eleanor, and still has the possession of them.

The court is asked to declare that these moneys are to be treated as real estate, and consequently pass, by the statute of descent, to the complainants, who are the uncles and aunts of the said Frances Eleanor, subject only to the tenancy by the curtesy of the said John S. as the husband of the said Sarah.

Wetherill v. Hough.

As to the $200, it is insisted upon the part of the defendant, John S. Hough, that since the lands of the infant of that value were converted into money by the order and direction of the court, it must be presumed to have been in the interest, or for the benefit of the infant, and that it was consequently such a conversion as would have resulted if Frances Eleanor had been of age and performed the same act in person.  It is claimed that this was a voluntary, as distinguished from a compulsory, conversion, such as characterizes the sale of·lands under the statute by executors and administrators for the payment of debts of decedents, when the question arises as to whether any surplus remaining must be treated as real estate or as personalty.

The $200 must be treated as real estate. . The case most nearly like this which has been·considered by our own courts, is that of *Snowhill* v. *Snowhill, 2 Gr. Ch. 20,* which was before the chancellor on demurrer, and before the court of errors and appeals, as appears in the opinion of Chancellor Pennington, in *1 Gr. Ch. 30.*  The decision of the court of errors and appeals in that case has not been reported, but it appears from the case of *Oberle* v. *Lerch, 3 C. E. Gr. 350,* that the correctness of the decision was very seriously questioned by counsel and an effort made to have it overruled, but after full consideration and a review of a number of authorities, the chancellor, without qualification, approved the decision of the court of errors and appeals, in the case of *Snowhill* v. *Snowhill.*  The case of *Oberle* v. *Lerch* was taken up on appeal (*3 C. E. Gr. 575*) and the decree of the chancellor affirmed.  Now, in the *Snowhill Case,* the legislature by special enactment authorized the guardian of an infant to sell certain real estate belonging to the infant.  After such sale the infant died, and the question presented for the determination of the court was whether the proceeds of such sale should be treated as real.or personal estate.  The chancellor, on demurrer, decided that it should be treated as personalty which passed to the representative of the infant, while the court of errors and appeals decided that it should be treated as real estate and that it descended to the heir-at-law of the infant.

The rule to be extracted from this case is that where there is a compulsory conversion of the real estate of an infant, the proceeds during the minority of the owner retain the character of real estate for the purposes of devolution and transmission.

The next case which has any real likeness to the present one is that of *Smith* v. *Bayright, 7 Stew. Eq. 424.* In this case the land of a monomaniac, which she held as a tenant in common with others, was sold upon the application of one of the tenants in common on proceedings in partition and her interest paid into court. At the time of the sale she was confined in a hospital, and was subsequently discharged therefrom and for a considerable period resided at her own home. During the last-named period she frequently declared her intention to make application to the court for the payment of the proceeds of the sale to her. The chancellor held that, after her death, the money so in court might properly be regarded as personal, rather than real estate. From what has been said, it will be seen that the owner recognized and claimed the fund as personal property.

Another case where conversion was accomplished by the aid of the court is that of *Jacobus* v. *Jacobus, 9 Stew. Eq. 248.* In this case it was held that where, on a bill filed for the partition of lands, they are sold under the statute, and a defendant, without filing plea or answer, accepts of all she is entitled to except her own share of the portion invested for a brother during his lifetime, under the will of their father, all her interest is thereby converted into personalty. This question was also before the court of errors and appeals under the title of *Cox* v *Roome, 11 Stew. Eq. 259,* in which the disposition of the same fund came under discussion. At the conclusion of the opinion of the court (at *p. 264*), the chief-justice said: " I was also instructed by this court to state that, although there is a contrariety of opinion among the judges upon the subject, according to the views of a majority of the members, the ground upon which the case was put in the court below should be sustained, to the effect that, under the circumstances, there was a conversion of the realty, out and out, and that, consequently, the appellants, as heirs-at-law, are not entitled to the fund in question."

In both of these cases the decision of the court was controlled by the fact that the persons interested in the proceeds of sale had signified their consent to, or had acquiesced in, the action of the court which directed the sale.

In *Ware* v. *Polehill, 11 Ves. 257,* the same question was before Lord-Chancellor Eldon, and (at *p. 278*) he made these observations : " I have uniformly made it a rule, since I have sat here, where property of one nature has been applied for the benefit of an infant to property of another nature, to have an express provision that, if he shall not attain the age at which he shall have a disposable power, the representative shall not be prejudiced in any degree by the act done by the court in contemplation of the infant's benefit, in all the circumstances surprise or accident can throw around it.    First it is said this is the effect of the court's declaration ; but if the court forgets to make that declaration, the same rule does not obtain ; and the court has disposed of the property by an imperfect judgment in another manner, and subject to different equities.    That is not correct, for the declaration is made, because that is the law applicable to the case of the infant ; and it is, of course, to reform the order."

In the case of *Ex parte Phillips, 19 Ves. 118,* the same principles were reaffirmed by the same lord-chancellor with no little emphasis.    In this case he very clearly pointed out the origin and nature of the different powers exercised by the court of chancery in dealing with the property rights of infants and lunatics.    He said : " In the case of the infant the lord-chancellor is acting as the court of chancery ; not so in lunacy, but under a special, separate commission from the crown, authorizing him to take care of the property and for the benefit of the lunatic.    In the case of the infant it is settled that, as a trustee out of court cannot change the nature of the property, so the court, which is only a trustee, must act as the trustee out of court ; and finding that a change will be for the benefit of the infant, must so deal with it as not to affect the powers of the infant over his property, even during his infancy, when he has powers over one species of property, not over the others.    It may be for the benefit of the infant in many cases, that money

should be laid out in land if he should live to become adult, but if not it is a great prejudice to him, taking away his dominion by the power of disposition he has over personal property so long before he has it over real estate. The court, therefore, with reference to his situation, even during infancy, as to his powers over property, works the change, not to all intents and purposes, but with this qualification, that if he lives he may take it as real estate, but without prejudice to his right over it during infancy as personal property."

These cases were both considered subsequent to that of *Oxenden* v. *Lord Compton, 2 Ves. Jr. *69,* upon which the counsel of the defendant greatly relied in his claim that the $200 should be treated as personal property. They are not in conflict with that case, but explanatory of the different grounds upon which the court proceeds in the different cases.

The doctrine recognized by the court of errors and appeals in the case of *Snowhill* v. *Snowhill, supra,* and which was sustained by way of argument in the case of *Oberle* v. *Lerch, supra,* I think is abundantly broad to include and control the disposition of the sum of $1,320.64, last above named. The conversion which produced that sum was by compulsory proceeding, authorized by legislation in favor of railroad corporations. In England it has been declared that in such case no conversion is effectual as against infants. *Kelland* v. *Fulford, 6 L. R. Ch. Div. 491.* Nor against a lunatic. *Dixie* v. *Wright, 32 Beav. 662; In re Wharton, 5 De G., M. & G. 33.* Nor as against a felon who was convicted and transported. *In re Harrop, 3 Drew. 726, 3 Jur. (N. S.) 380, 26 L. J. Ch. 516 ;* see, also, *In re Baget, 31 L. J. Ch. 772, 6 L. T. (N. S.) 774; In re Stewart, 1 Sm. & G. 32, 16 Jur. 1063.*

The cases show that where the conversion is compulsory, *i. e.,* against the will or without the consent of the owner, the fund will be treated as real estate until the owner, being *sui juris* or of disposable capacity, manifests a willingness to accept it as personal.

The $80 must be controlled by a different rule. The parties claiming it were, at the time of the sale, *sui juris,* and under-

took to convey to and secure the entire fee (including that of the infant) in the grantee. The $80, which represented the supposed interest of the infant, was paid to her guardian. The complainants have not the shadow of a right to claim the proceeds of that transaction, which represented the interest of the infant as real estate. I will advise a decree in accordance with these views.